CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARON JAMES, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| PRIMAL NUTRITION, LLC, | |
| Defendant. | |

CROSNER LEGAL, P.C.

# INTRODUCTION

1.      Plaintiff Caron James ("Plaintiff") brings this action individually and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, against Primal Nutrition, LLC ("Defendant" or "Primal"), and upon information and belief and investigation of counsel, alleges as follows:

2.      Defendant manufactures, distributes, advertises, and sells Primal Kitchen brand avocado oil. Plaintiff alleges two separate problems with these products.

## *(1) Contaminated Avocado Oil*

3.      The first issue is that Defendant advertises its Avocado as **"Pure"** and places a "**Pure…Quality…Tested**" logo on the front of the Avocado Oil. Testing from an EPA accredited laboratory has found that Defendant's Primal Kitchen Pure Avocado Oil Centrifuge Extracted contains phthalates at a concentration of 2,774 parts per billion (ppb).

4.      Phthalate contaminated oil is not "Pure" or "Quality Tested."

5.      Phthalates are chemicals that demonstrate to be endocrine disruptors and are detrimental to human health. Phthalates are well-known for their ability to disrupt the hormonal system, with extensive laboratory research concluding that exposure to phthalates reduces hormone levels and leads to an array of reproductive problems. They are horrible for the environment and are not considered part of a pure and quality tested product as Defendant contends.

## *(2) The Non-GMO Claim*

6.      Second, the packaging of the Primal brand avocado oil prominently displays on the front label that the Avocado Oil is "non-GMO Project Verified" (the "Non-GMO Claims").[1]

---

[1] The "Avocado Oil" is used throughout to mean the Primal Kitchen Avocado Oil labeled as "Non-GMO" and/or "Non-GMO Project Verified" that is not also labeled as organic, including but not limited to Primal Kitchen Pure Avocado Oil and Primal Kitchen Pure Avocado Oil High Heat Cooking Spray.

CROSNER LEGAL, P.C.

7.    The World Health Organization defines genetically modified organisms ("GMOs") as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."[2]

8.    Defendant's Non-GMO Claims are misleading because all avocado oil products are non-GMO—no GMO version of avocado oil is present on the market today. In fact, no GMO avocado oil has ever been sold. Defendant is using the Non-GMO Claims as a marketing ploy to greenwash its Avocado Oil and gain an unfair advantage over its truthful competitors.

9.    The California Supreme Court has recognized that this type of literally true but misleading advertising is unlawful. This is because consumer protection laws "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951 (2002)).

10.    Defendant's advertising scheme is intended to give consumers the impression that they are buying a premium product that is non-GMO, when in fact the Non-GMO Claims do not distinguish the Avocado Oil in any way from other avocado oil products that do not have Non-GMO Claims.

11.    Defendant does this because consumers perceive all-natural foods, which they believe include non-GMO foods, as better for them and healthier. As a result, the market for all-natural foods, and non-GMO foods in particular, has grown rapidly in recent years. Defendant is seeking to take advantage of this trend by misleading consumers into believing that its Avocado Oil has a trait that other competing avocado oils do not have.

12.    By prominently featuring the Non-GMO Claims on its Avocado Oil, Defendant is intending to induce consumers to pay more for its Avocado Oil than it would pay for other comparable products that are not misleadingly labeled with Non-GMO Claims. A consumer

---

[2] Food, genetically modified, available at https://www.who.int/news-room/questions-and-answers/item/food-genetically-modified (last accessed February 10, 2025).

reasonably believes that the presence of the Non-GMO Claims means the Avocado Oil has qualities and traits that comparable avocado oil products without the Non-GMO Claims do not have, when in fact all avocado oil for sale in the United States is non-GMO.

13.     Plaintiff, who purchased the Avocado Oil in California, was deceived by Defendant's unlawful conduct and brings this action individually and on behalf of consumers to remedy Defendant's unlawful acts.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant (Defendant is a Delaware company with its principal place of business in Pittsburgh, PA.); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

15.     The Avocado Oil is sold at numerous retail stores and Plaintiff is seeking to represent a class of California consumers. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant.

16.     Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, Plaintiff estimates that the amount in controversy exceeds $5 million.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Avocado Oil in California, specifically in this district. The marketing of the Avocado Oil, including the decision of what to include and not include on the labels, emanates from Defendant. The address

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

listed on the back label of the Avocado Oil is in Oxnard, California. Thus, Defendant has intentionally availed itself of the markets within California through its operating in California as well as advertising, marketing, and sale of the Avocado Oil to consumers in California, including Plaintiff.

18.    The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Avocado Oil to Plaintiff and members of the Class in California. By operating and distributing and selling the Avocado Oil in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

19.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District since Plaintiff purchased the Avocado Oil within this District.

### PARTIES

20.    Defendant Primal Nutrition, LLC. is a Delaware company with its principal place of business in Pittsburgh, PA. At all times during the class period, Defendant was the manufacturer, distributor, and marketer of the Avocado Oil. Defendant represents itself as having "ingredients you can trust" and that they only use "premium, purposeful ingredients that we'd feed our own families."[3]

21.    Plaintiff is a resident of California. Plaintiff purchased the Avocado Oil during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims in purchasing the Avocado Oil as set forth below.

### FACTUAL ALLEGATIONS

### THE AVOCADO OIL CONTAINS PHTHALATES IN DIRECT CONTRADICTION TO THE "PURE" AND "PURE QUALITY TESTED" LABELING

---

[3] Our Mission, *available at* https://www.primalkitchen.com/pages/our-mission (last accessed February 26, 2025).

CROSNER LEGAL, P.C.

1  22. Defendant labels its Avocado Oil as "Pure" and "Pure…Quality…Tested" when

2  the Avocado Oil contains harmful phthalates, which makes it impure.



23. Testing from an EPA accredited laboratory has found that Defendant's Primal

Kitchen Pure Avocado Oil Centrifuge Extracted contains phthalates at a concentration of 2,774

ppb. [4]

---

[4] Segedie, L., *Avocado Oils Tested for Phthalates — Buying Guide* (Aug. 6, 2024) *available at* https://www.mamavation.com/food/avocado-oils-tested-for-phthalates-buying-guide.html.

CROSNER LEGAL, P.C.

24.    The EPA-certified laboratory tested for fourteen phthalate chemicals: Diethyl phthalate (DEP), Di-n-propyl phthalate (DPP), Diisobutyl phthalate (DIBP), Dibutyl phthalate (DBP), Dihexyl phthalate (DnHP), Benzyl butyl phthalate (BBP), Dicyclohexyl phthalate (DCHP), Diisononyl phthalate (DINP), Di-n-octyl phthalate (DnOP), Diisodecyl phthalate (DIDP), bis(2-Ethylhexyl)phthalate (DEHP), Dimethyl phthalate (DMP), Bis(2-propylheptyl) Phthalate (DPHP), and Didecyl phthalate (DDP). The reported testing results are expressed as a sum total of these phthalates.

25.    Phthalates are synthetic chemicals found in plastics. They are a type of "endocrine disrupting chemicals" which means that they negatively affect human hormones.

26.    Phthalate exposure is associated with the development of diabetes.[5]

27.    Phthalate metabolites have documented biochemical activity including activating peroxisome proliferator-activated receptor and antiandrogenic effects, which may contribute to the development of obesity.[6] In vitro and in vivo studies suggest that phthalates have significant effects on the development of obesity.[7]

28.    Phthalates accumulate in the human body over time.[8] They are plastics and are not environmentally friendly or considered clean chemicals.[9]

---

[5] Radke EG, Galizia A, Thayer KA, Cooper GS. Phthalate exposure and metabolic effects: a systematic review of the human epidemiological evidence. Environ Int. 2019 Nov;132:104768. doi: 10.1016/j.envint.2019.04.040. Epub 2019 Jun 10. PMID: 31196577; PMCID: PMC9472300.

[6] Kim SH, Park MJ. Phthalate exposure and childhood obesity. Ann Pediatr Endocrinol Metab. 2014 Jun;19(2):69-75. doi: 10.6065/apem.2014.19.2.69. Epub 2014 Jun 30. PMID: 25077088; PMCID: PMC4114051.

[7] Id.

[8] Federica Arrigo, Federica Impellitteri, Giuseppe Piccione, Caterina Faggio, Phthalates and their effects on human health: Focus on erythrocytes and the reproductive system, Comparative Biochemistry and Physiology Part C: Toxicology & Pharmacology. 2023;270:ISSN 1532-0456.

[9] See id.

29.     Phthalates pose "chronic health harms and potentially billions of dollars in costs."[10] In fact, a study in 2021, led by children's environmental health expert Dr. Leonardo Trasande, was published in the journal Environmental Pollution. "It calls for urgent regulatory action to tackle health risks from phthalates – echoing EWG's long-running warnings about the chemicals."[11]

30.     The Avocado Oil states in large lettering on the front label that the oils are "Pure". The Avocado Oil additionally states that it is "quality" and have been "tested" and found to be "pure."

31.      On Defendant's website, it reinforces the pure representations by saying that their products don't have "other nonsense you don't want."[12]

**"NON-GMO" IS PROMINENTLY DISPLAYED ON THE LABEL OF THE AVOCADO OIL**

32.     The front label for the Avocado Oil prominently states that it is "Non-GMO" thereby misleading reasonable consumers into believing that the Avocado Oil is a premium product that is superior to other otherwise identical products that do not have such attributes. Below is an example of the label of the Avocado Oil.

33.     Below is the Non-GMO label on the Avocado Oil isolated and enlarged.



34.     The ingredients list for the Avocado Oil includes solely avocado oil.

---

[10] Environmental Working Group (EWG). Six tips to avoid phthalates after study highlights health harms, billion-dollar costs (2021), *available at* https://www.ewg.org/news-insights/news/2021/10/six-tips-avoid-phthalates-after-study-highlights-health-harms-billion.

[11] *Id.*

[12] Our Mission, *available at* https://www.primalkitchen.com/pages/our-nutritional-philosophy

CROSNER LEGAL, P.C.

**GMO Avocado Oil Does Not Exist**

35.    GMO avocados and thus GMO avocado oil have never been sold to consumers in the United States or indeed the entire world.

36.    According to the Food and Drug Administration (the "FDA"), only 11 GMO crops exist in the United States – alfalfa, apples, canola, corn, cotton, papaya, pink pineapple, potatoes, soybeans, summer squash, and sugar beets.[13]

37.    The Agricultural Marketing Service of the United States Department of Agriculture maintains a list of Bioengineered Foods to identify the crops or food that are available in bioengineered (another word for GMO) form throughout the world—the complete list is alfalfa, apples, canola, corn, cotton, eggplant, papaya, pink pineapple, potatoes, salmon, soybean, squash, sugar beet, and sugarcane.[14] This list is codified at 7 CFR 66.6.

38.    No GMO avocados are available at all. A consumer cannot purchase a GMO avocado or avocado oil. They simply do not exist for sale.

39.    A more expansive list of all GMO products from around the world does not include avocado.[15] GMO avocados or other GMO avocado products are not available for consumers anywhere in the entire world.

40.    The Hass avocado, the most common avocado sold in the United States and the specific type of avocado that Defendant says is in its Avocado Oil, is not genetically modified and is the same type of avocado that Rudolph Hass discovered and patented in 1935.[16] Defendant specifically notes that it uses this Hass avocado in its products, an avocado that is not GMO, like all other varieties of avocados.

---

[13] Agricultural Biotechnology, *available at* https://www.fda.gov/food/consumers/agricultural-biotechnology (last accessed February 10, 2025).

[14] List of Bioengineered Foods, *available at* https://www.ams.usda.gov/rules-regulations/be/bioengineered-foods-list (last accessed February 10, 2025)

[15] GM Crops List, *available at* https://www.isaaa.org/gmapprovaldatabase/cropslist/default.asp (last accessed February 10, 2025).

[16] Organic vs Traditionally Grown Avocados, *available at* https://loveonetoday.com/how-to/organic-vs-traditionally-grown-avocados/ (last accessed February 7, 2025).

41.     So, any pure avocado oil on the market cannot be GMO now. The Non-GMO Claims on the Avocado Oil are meaningless and a misleading attempt to use those claims to distinguish the Avocado Oil from other avocado oil products that do not exist on the market, GMO avocado oil.

### ISSUES WITH THE NON-GMO PROJECT'S PRACTICES

42.     An article from the University of California, Davis states, "Products are being labeled as non-GMO as if there is an alternative" and some "companies have begun to label their products as non-GMO, leading to a confusing consumer landscape and a frustrated scientific community."[17] "Products that are not even available as GMOs are being labeled as non-GMO."[18]

43.     The Information Technology & Innovation Foundation (ITIF) submitted a citizen petition requesting the FDA to prohibit deceptive "Non-GMO" labeling. Citing FDA comments, ITIF wrote:

> [E]ven truthful information can mislead consumers[.] Accordingly if voluntary labeling is to be employed, misleading implications must be avoided and information presented must appear in its proper context. Thus, FDA considers voluntary representations with regard to the presence or absence of genetic modification in a food to be potentially misleading, and the agency has said these must be crafted with care and caution.[19]

44.     The ITIF notes that practices like the ones at issue in this action are misleading: "Consumers who see the Non-GMO Project butterfly logo are unavoidably misled on multiple

[17] Ritchie, D., *An Honest Discussion on the Labeling of GMOs - GMO labels are misleading, frustrating science and science-advocates*, University of California, Davis (Feb. 26, 2025) *available at* https://davissciencesays.ucdavis.edu/blog/honest-discussion-labeling-gmos.

[18] *Id.*

[19] Val Giddings, L. and Atkinson, Robert D., *Petition to the Food and Drug Administration Requesting a Stop to Deceptive and Misleading "Non-GMO" Food Labels*, Information and Technology Innovation Foundation (Sep. 24, 2018), available at https://www2.itif.org/2018-non-gmo-citizen-petition.pdf

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

levels. . . . the butterfly also often misleads consumers in another way: it is often found on items where there is no counterpart improved through biotechnology available on the market."[20]

45.    The Missouri Farm Bureau considers the Non-GMO Project logo a fraudulent marketing tactic: "the vast majority of the products that are sold at a premium as 'GMO-free' literally could not be GMO if they wanted to be—no GMO version exists. These marketing tactics smell strongly of fraud."[21]

46.    The Genetic Literacy Project calls the Non-GMO Project logo a "deceptive farce."[22]

47.    A prominent agricultural news organization states "the non-GMO label has practically no basis in science and only serves to confuse, fear monger and perpetuate misinformation. . . . the Non-GMO Verified symbol isn't working at all to educate consumers, and in actuality is doing quite the opposite."[23]

**THE NON-GMO CLAIMS ARE HIGHLY PROFITABLE**

48.    Manufacturers and sellers use product packaging to convey natural and purportedly healthy material. They do so because consumers find the naturalness of a food product to be important in making purchasing decisions.

49.    According to the Natural Foods Merchandiser, a leading chronicler of the natural foods market in the United States, the natural foods market grew to $215 billion in 2022 and continues to grow each year.

CROSNER LEGAL, P.C.

---

[20] *Id.*

[21] Bohel, Eric, *GMO-Free Marketing is Deliberately Misleading Consumers*, Missouri Farm Bureau (Jan. 4, 2019), available at https://mofb.org/gmo-free-marketing-is-deliberately-misleading-consumers/.

[22] Miller, Michele, *Viewpoint — Why the non-GMO label is a deceptive farce*, Genetic Literacy Project (Mar. 5, 2024), available at https://geneticliteracyproject.org/2024/03/05/viewpoint-why-the-non-gmo-label-is-a-deceptive-farce/.

[23] AG Daily, *Food Science Babe: The Non-GMO Project's tantrum over the USDA's bioengineered label,* AgDaily (Feb. 20, 2019), available at https://www.agdaily.com/insights/non-gmo-project-unhappy-usda-bioengineered-label/.

1

2

3

50.    Between 2019 and 2021, sales of products with the Non-GMO Project seal grew 41.6%, almost twice as much as those with no non-GMO labeling. Accordingly, research found that the Non-GMO Project labeling drives purchases.

4

5

6

51.    In 2018, 46 percent of surveyed American consumers answered that they avoided genetically modified foods and 42 percent of those looked for the non-GMO project seal to confirm that. [24]

7

8

52.    It was estimated that the non-GMO food market was worth $947.8 million in 2018 and that the market would continue to expand, potentially reaching $1.1 billion by 2023.

9

10

11

12

13

53.    A study in 2015 revealed that, when directly compared item by item, GMO-free food costs an average of 33% more than a comparable food item that is not GMO-free. When compared on a per-ounce basis, GMO-free foods cost an average of 73% more.[25] Consumers are willing and do pay more for foods that are labeled non-GMO, believing they confer a health benefit from them compared to other products in the same category.

14

15

16

17

54.    In 2018, a consumer study revealed that there is a 10-62% price premium connected to non-genetically modified products. When compared to conventional versions of ice cream, breakfast cereal, tortilla chips, and cooking and salad oils, consumers paid a non-GMO price premium of 10 percent, 26 percent, 24 percent, and 62 percent respectively.[26]

18

19

20

55.    Consumers pay a premium for products that have non-GMO claims on them, leading companies to use such claims on their products to reap the benefits of the higher price they can charge as a result.

21

**THE PREMIUM NON-SEED OIL MARKET**

22

23

24

[24] Report: nearly half of consumers avoid GMOs; more are buying non-GMO products, *available at* https://non-gmoreport.com/articles/report-nearly-half-of-consumers-avoid-gmos-more-are-buying-non-gmo-products/ (last accessed February 11, 2025)

25

26

[25] Goodwin, Barry K, Marra, Michele C, and Piggott, Nicholas E, *The Cost of a GMO-Free Market Basket of Food in the United States*, available at https://mospace.umsystem.edu/xmlui/bitstream/handle/10355/51946/CostGMOFreeUnitedStates.pdf?sequence=1&isAllowed=y

27

28

[26] GM Food Labels Could Burden Low-Income Consumers , *available at* https://undark.org/2018/04/19/gmo-labels-cost-low-income/ (last accessed February 11, 2025).

Crosner Legal, P.C.

CROSNER LEGAL, P.C.

56.    Shoppers perceive non-seed oils like avocado and olive oils in a different category than cheaper oils like canola, corn, or general vegetable oil. Avocado and olive oils are in a category separate from other cheaper oils because they are perceived as healthier, associated with distinctive flavors, and are considered a premium product. As such, consumers of avocado oils compare the product to other premium oils like avocado oils and olive oils.

57.    Consumers perceive seed oils and non-seed oils very differently and do not consider them in the same category when shopping. Here, avocado, olive, and coconut oils are not seed oils and canola, corn, and soybean oils are in another food category because they are seed derived oils. Non-seed oils are perceived as premium because they are cleaner, provide more health benefits, and have distinctive flavor profile. On the other hand, seed derived oils are cheaper and have a neutral flavor profile.

### DEFENDANT'S MISLEADING NON-GMO CLAIMS

58.    Per the Pew Research Center, 49% of U.S. adults believe foods that contain GMO ingredients are less healthy than foods without them, and 88% of consumers have a strong preference for including this information on the label. A recent study revealed that consumers use non-GMO labels to guide their purchase decisions.[27]

59.    Knowing this, Defendant placed the Non-GMO Claims on its Avocado Oil, knowing that consumers often flock to products with such labeling.

60.    However, there is no tangible difference between an avocado oil product without Non-GMO Claims and one with them—no GMO avocado oil exists for sale today. Consumers are opting to choose Defendant's Avocado Oil and paying a premium for it based on a misleading label.

61.    Numerous brands, such as Signature Select, Mantova, and Baja Precious sell avocado oil without misleading claims regarding its GMO status on the label.

---

[27] Do Consumers Care about GMO Labeling When Making Buying Decisions?, *available at* https://www.informs.org/News-Room/INFORMS-Releases/News-Releases/Do-Consumers-Care-about-GMO-Labeling-When-Making-Buying-Decisions (last accessed February 11, 2025)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

62.     Defendant's efforts using the Non-GMO Claims are intended to further Defendant's desire to appear healthier and better for both the consumer and the environment, thereby increasing the purchases of its Avocado and the prices it can charge for its Avocado Oil, increasing its revenues.

63.     In its guidance released in 2015 and updated in 2019, the FDA explicitly discussed non-GMO labeling on products that are not made using modern biotechnology as a label that would be misleading to consumers. First, the FDA reinforced that "a food is misbranded if its labeling is false or misleading in any particular." The FDA then when on to say that "[a]nother example of a statement in food labeling that may be false or misleading could be the statement "None of the ingredients in this food is genetically engineered on a food where some ingredients of the ingredients are incapable of being produced through genetic engineering." The FDA continued, saying that it "may be necessary to carefully qualify the statement where modern biotechnology is not used to produce a particular ingredient or type of food" in order for the product to not be mislabeled.[28]

64.     Just like the FDA contemplated when writing its guidance, Defendant's Non-GMO Claims are misleading to reasonable consumers because modern biotechnology is not used to produce anything in the Avocado Oil. Consumers are being misled into believing that the Avocado Oil has traits compared to other avocado oil products that do not have any such claims that they simply do not have.

65.     Defendant did not provide any sort of qualification that the FDA advised, instead choosing to deceive consumers into believing they were purchasing a premium product, hiding the fact that consumers were instead purchasing the Avocado Oil without a single ingredient which modern biotechnology is used to produce.

---

[28] Voluntary Labeling Indicating Whether Foods Have or Have Not Been Derived from Genetically Engineered Plants: Guidance for Industry, FDA, issued November 2015, revised March 2019, *available at*  https://www.fda.gov/media/120958/download?attachment.

CROSNER LEGAL, P.C.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S DECEPTIVE LABELING AND SUFFERED ECONOMIC INJURY**

66.     Consumers, like Plaintiff, relied on Defendant's "Non-GMO" and "Pure" claims. The Non-GMO and pure claims on the labels of the Avocado Oil are material to reasonable consumers. As evidenced above, there is strong consumer demand for Non-GMO as well as "pure" products and consumers are willing to pay more for them.

67.     Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Avocado Oil that was misleadingly labeled and advertised.

68.     Consumers, including Plaintiff, would not have purchased Defendant's Avocado Oil, or would have paid less for the Avocado Oil, if they had known the Non-GMO Claims in fact conveyed nothing about the actual qualities of the Avocado Oil.

69.     Literally true statements, like the Non-GMO Claims, can be misleading to consumers and lead them to purchase decisions they would not have otherwise made, like here. *Bruton v. Gerber Prods*. Co., 703 F. App'x 468, 471 (9th Cir. 2017); *Leoni v. State Bar*, 39 Cal. 3d 609, 627, 217 Cal.Rptr. 423, 704 P.2d 183 (1985) (holding that advertising, though not false, was misleading because "[a] necessary fact ha[d] been omitted.") Defendant omitted the necessary fact that avocado oil sold in the United States today cannot be GMO, and consumers like Plaintiff, paid the price.

70.     Further, Plaintiff and other consumer would not have purchased the Avocado Oil had they known it contains phthalates which are not considered to be "Pure" like the label of the Avocado Oil states. Phthalate contaminated products, like the Avocado Oil, should not be labeled as "Pure…Quality…Tested." This is obviously false and misleading advertising that Plaintiff seeks to stop.

14

CROSNER LEGAL, P.C.

**PLAINTIFF'S PURCHASE OF THE AVOCADO OIL**

71.    Plaintiff purchased the Avocado Oil with the Non-GMO Claims at a retail store near her home in Merced County at least once since 2022. When purchasing the Avocado Oil, Plaintiff saw and relied on the Non-GMO Claims on the front label. Plaintiff would not have purchased the Avocado Oil or at least would have paid less for it, had she known that all avocado oil on the market is not genetically modified, making the Non-GMO Claims meaningless, more expensive, and deceptive. Plaintiff paid approximately $16 for the Avocado Oil.

72.    When purchasing the Avocado Oil, Plaintiff saw and relied on the "Pure" and "Pure…Quality…Tested." claims on the front label. Plaintiff would not have purchased the Avocado Oil, or at least would have paid less for them, had she known they contained phthalates, in contradiction to the label. Phthalate-contaminated food products are not "Pure" or "Quality Tested."

73.    As a result, Plaintiff suffered injury in fact when she spent money to purchase the Avocado Oil she would not have purchased, or would have paid less for, absent Defendant's misconduct.

74.    Plaintiff continues to see the Avocado Oil for sale at retail stores near her home in California and on amazon.com and she desires to purchase the Avocado Oil again if the Avocado Oil was labeled in a non-deceptive manner. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiff is unable to rely on the Avocado Oil's labeling when deciding in the future whether to purchase the Avocado Oil.

**NO ADEQUATE REMEDY AT LAW**

75.    Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Avocado Oil more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

76.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Avocado Oil, across a multitude of media platforms, including

15

the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products without Non-GMO Claims and the "Pure" claims.

77.    Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

78.    A primary litigation objective in this litigation is to obtain injunctive relief in the form of a label change and/or a product formulation change. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to mislead consumers as to the Avocado Oil with the Non-GMO Claims when avocado oil cannot be GMO. Defendant continues to mislead consumers as to the Avocado Oil with the "pure" and "quality tested" claims because the Avocado Oil is contaminated with phthalates.

79.    Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, public injunctions are available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

80.    It is also premature to determine whether there is an adequate remedy at law. No discovery has been conducted, and no expert reports have been exchanged. Defendant's internal documents may provide insight into different damages theories such as restitution in the form of the profits gained attributable to the conduct at issue.

## CLASS ACTION ALLEGATIONS

81.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

All persons in California who purchased the Avocado Oil for personal use from the beginning of any applicable limitations period through the date class notice is disseminated.

82.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Avocado Oil from Defendant.

83.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

84.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

85.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

86.     <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Avocado Oil;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Avocado Oil;

c.     Whether Defendant made misrepresentations concerning the Avocado Oil that were likely to deceive the public;

d.     Whether Plaintiff and the Class are entitled to injunctive relief;

CROSNER LEGAL, P.C.

1    e.    Whether Plaintiff and the Class are entitled to money damages and/or restitution

2    under the same causes of action as the other Class Members.

3        87.    Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent.

4    Plaintiff's claims are typical of the claims of each Class Member in that every member of the

5    Class was susceptible to the same deceptive, misleading conduct and purchased the Avocado

6    Oil. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

7        88.    Adequacy: Plaintiff is an adequate Class representative because Plaintiff's

8    interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the

9    consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong

10   interest in vindicating the rights of the class; Plaintiff has retained counsel competent and

11   experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this

12   action. Plaintiff has no interests which conflict with those of the Class. The Class Members'

13   interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel.

14   Defendant has acted in a manner generally applicable to the Class, making relief appropriate

15   with respect to Plaintiff and the Class Members. The prosecution of separate actions by

16   individual Class Members would create a risk of inconsistent and varying adjudications.

17       89.    The Class is properly brought and should be maintained as a class action

18   because a class action is superior to traditional litigation of this controversy. A class action is

19   superior to the other available methods for the fair and efficient adjudication of this controversy

20   because:

21       a.    The joinder of hundreds of individual Class Members is impracticable,

22   cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

23       b.    The individual claims of the Class Members may be relatively modest compared

24   with the expense of litigating the claim, thereby making it impracticable, unduly burdensome,

25   and expensive to justify individual actions;

26       c.    When Defendant's liability has been adjudicated, all Class Members' claims can

27   be determined by the Court and administered efficiently in a manner far less burdensome and

28   expense than if it were attempted through filing, discovery, and trial of all individual cases;

CROSNER LEGAL, P.C.

1    d.    This class action will promote orderly, efficient, expeditious, and appropriate

2    adjudication and administration of Class claims;

3    e.    Plaintiff knows of no difficulty to be encountered in the management of this

4    action that would preclude its maintenance as a class action;

5    f.    This class action will assure uniformity of decisions among Class Members;

6    g.    The Class is readily definable and prosecution of this action as a class action will

7    eliminate the possibility of repetitious litigation; and

8    h.    Class Members' interests in individually controlling the prosecution of separate

9    actions is outweighed by their interest in efficient resolution by single class action;

10    90.    Additionally, or in the alternative, the Class also may be certified because

11    Defendant has acted or refused to act on grounds generally applicable to the Class thereby

12    making final declaratory and/or injunctive relief with respect to the members of the Class as a

13    whole, appropriate. As noted above, injunctive relief is a primary form of relief sought in this

14    action.

15    91.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on

16    behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent

17    Defendant from engaging in the acts described, and to require Defendant to provide full

18    restitution to Plaintiff and the Class members.

19    92.    Unless the Class is certified, Defendant will retain monies that were taken from

20    Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide

21    injunction is issued, Defendant will continue to commit the violations alleged and the members

22    of the Class and the general public will continue to be misled.

23    **FIRST CLAIM FOR RELIEF**

24    **Violation of California's Consumers Legal Remedies Act**

25    **Cal. Civ. Code §§ 1750, *et seq.***

26    93.    Plaintiff realleges and incorporates by reference all allegations contained in this

27    complaint, as though fully set forth herein.

28

1    94.    Plaintiff brings this claim under the CLRA individually and on behalf of the

2    Class against Defendant.

3    95.    At all times relevant hereto, Plaintiff and the members of the California Class

4    were "consumer[s]," as defined in California Civil Code section 1761(d).

5    96.    At all relevant times, Defendant was a "person," as defined in California Civil

6    Code section 1761(c).

7    97.    At all relevant times, the Avocado Oil manufactured, marketed, advertised, and

8    sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

9    98.    The purchases of the Avocado Oil by Plaintiff and the members of the Class

10    were and are "transactions" within the meaning of California Civil Code section 1761(e).

11    99.    Defendant disseminated, or caused to be disseminated, through its advertising,

12    misleading    representations,    including    the    Non-GMO    Claims.    These    are    material

13    misrepresentations and omissions as reasonable consumer would find the fact that the Avocado

14    Oil is no different to comparable avocado oils without any Non-GMO claims to be important in

15    their decision in purchasing the Avocado Oil.

16    100.    Defendant disseminated, or caused to be disseminated, through its advertising,

17    misleading representations, including the "Pure" claims. These are material misrepresentations

18    as reasonable consumer would find the fact that the Avocado Oil contains phthalates in direct

19    contradiction to the labeling claims to be important in their decision in purchasing the Avocado

20    Oil.

21    101.    Defendant's representations violate the CLRA in the following ways:

22    a)    Defendant represented that the Avocado Oil has characteristics,

23    ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

24    b)    Defendant represented that the Avocado Oil is of a particular standard,

25    quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

26    c)    Defendant advertised the Avocado Oil with an intent not to sell the

27    Avocado Oil as advertised (Cal. Civ. Code § 1770(a)(9)); and

28

CROSNER LEGAL, P.C.

1    d)    Defendant represented that the subject of a transaction has been supplied

2    in accordance with a previous representation when it has not (Cal. Civ. Code §

3    1770(a)(16)).

4    102.    Defendant violated the CLRA because the Avocado Oil was prominently

5    advertised with the Non-GMO Claims but, in reality, it is no different from an otherwise

6    identical avocado oil product without any Non-GMO claims. Defendant knew or should have

7    known that consumers would want to know its Avocado Oil does not have the qualities

8    associated with Non-GMO products when compared to comparable avocado oils without any

9    such claims.

10    103.    Defendant violated the CLRA because the Avocado Oil was prominently

11    advertised with the "Pure" and "Pure…Quality…Tested" claims but, in reality, the Avocado Oil

12    is not pure since it contains phthalates. Defendant knew or should have known that consumers

13    would want to know that the Avocado Oil contains phthalates which contradict the labeling.

14    104.    Defendant's actions as described herein were done with conscious disregard of

15    Plaintiff's and the Class members' rights and were wanton and malicious.

16    105.    Defendant's wrongful business practices constituted, and constitute, a continuing

17    course of conduct in violation of the CLRA, since Defendant is still representing that the

18    Avocado Oil has characteristics which it does not have.

19    106.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of

20    the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices

21    alleged herein.

22    107.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in

23    writing by certified mail of the alleged violations of the CLRA and demanded that Defendant

24    rectify the problems associated with the actions detailed above and give notice to all affected

25    consumers of their intent to so act. Defendant failed to rectify or agree to rectify the problems

26    associated with the actions detailed herein and give notice to all affected consumers within 30

27    days of the date of written notice pursuant to section 1782 of the CLRA, so Plaintiff seeks

28    damages under the CLRA.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

108.    Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

109.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

110.    Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

111.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

112.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

113.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for Avocado Oil that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the comparable avocado oil products cannot be GMO and that the Avocado Oil is not "Pure" because it contains phthalates) of which it had knowledge. While Plaintiff and

the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

114.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Avocado Oil set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Avocado Oil has qualities that other comparable avocado oils that do not have non-GMO claims do not have, when they in fact do not as all avocado oil is non-GMO.

115.    Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Avocado Oil is "Pure" when it contains phthalates which are not pure.

116.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Avocado Oil. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Avocado Oil and Defendant's unlawful, unfair, and fraudulent practices.

117.    Defendant's wrongful business practices and violations of the UCL are ongoing.

118.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

119.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such

CROSNER LEGAL, P.C.

practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.      Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: June 6, 2025                          CROSNER LEGAL, P.C.


By:        */s/ Craig W. Straub*
           CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com

24

CLASS ACTION COMPLAINT

1

Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

2

3

4

5

Attorneys for Plaintiff

6

**Affidavit Pursuant to Civil Code Section 1780(d)**

7

I, Craig W. Straub, declare as follows: I am an attorney duly licensed to practice before

8

all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This

9

declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

10

Defendant has done, and is doing, business in California, including in this county. Such business

11

includes the marketing, promotion, distribution, and sale of the Avocado Oil.

12

I declare under penalty of perjury under the laws of the State of California that the

13

foregoing is true and correct. Executed June 6, 2025 at San Diego, California.

14

CROSNER LEGAL, P.C.

15

16

By:      */s/ Craig W. Straub*
CRAIG W. STRAUB

17

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com

18

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT