CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

CARON JAMES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PRIMAL NUTRITION, LLC,

Defendant.

Case No. 1:25-cv-00691-SAB

**FIRST AMENDED CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

## INTRODUCTION

1. Plaintiff Caron James ("Plaintiff") brings this action individually and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, against Primal Nutrition, LLC ("Defendant" or "Primal"), and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys as follows:

*2.* Defendant manufactures, distributes, advertises, and sells Primal Kitchen brand avocado oil ("the Avocado Oil" or "Products"). [1]

3. The issue is that Defendant advertises its Avocado Oil as **"Pure**" and places a "**Pure … Quality … Tested**" logo on the front of the Avocado Oil. Testing from an EPA accredited laboratory has found that Defendant's Primal Kitchen Pure Avocado Oil Centrifuge Extracted products contains phthalates at a concentration of 2,774 parts per billion (ppb).

4. Phthalate contaminated oil is not "Pure" or "Quality Tested."

5. Phthalates are chemicals that demonstrate to be endocrine disruptors and are detrimental to human health. Phthalates are well-known for their ability to disrupt the hormonal system, with extensive laboratory research concluding that exposure to phthalates reduces hormone levels and leads to an array of reproductive problems. They are horrible for the environment and are not considered part of a pure and quality tested product as Defendant contends.

6. Plaintiff, who purchased the Avocado Oil in California, was deceived by Defendant's "Pure" and "Pure … Quality … Tested" labeling and brings this action individually and on behalf of California consumers to halt the deceptive labeling and obtain compensation for putative class members.

[1] The "Avocado Oil" or "Products" is used throughout to mean the Primal Kitchen Avocado Oil labeled as "Pure" and "Pure … Quality … Tested" including Primal Kitchen Pure Avocado Oil and Primal Kitchen Pure Avocado Oil High Heat Cooking Spray.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant (Defendant is a Delaware company with its principal place of business in Pittsburgh, PA.); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

8. The Avocado Oil is sold at numerous retail stores and Plaintiff is seeking to represent a class of California consumers. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant.

9. Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, Plaintiff estimates that the amount in controversy exceeds $5 million.

10. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Avocado Oil in California, specifically in this district. The marketing of the Avocado Oil, including the decision of what to include and not include on the labels, emanates from Defendant. The address listed on the back label of the Avocado Oil is in Oxnard, California. Thus, Defendant has intentionally availed itself of the markets within California through its operations in California as well as advertising, marketing, and sale of the Avocado Oil to consumers in California, including Plaintiff.

11. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it

is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Avocado Oil to Plaintiff and members of the Class in California. By operating and distributing and selling the Avocado Oil in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District since Plaintiff purchased the Avocado Oil within this District.

## PARTIES

13. Defendant Primal Nutrition, LLC. is a Delaware company with its principal place of business in Pittsburgh, PA. At all times during the class period, Defendant was the manufacturer, distributor, and marketer of the Avocado Oil. Defendant represents itself as having "ingredients you can trust" and that they only use "premium, purposeful ingredients that we'd feed our own families."[2]

14. Plaintiff is a resident of California. Plaintiff purchased the Avocado Oil during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims in purchasing the Avocado Oil as set forth herein.

## FACTUAL ALLEGATIONS

### THE AVOCADO OIL CONTAINS PHTHALATES IN DIRECT CONTRADICTION TO THE "PURE" AND "PURE QUALITY TESTED" LABELING

15. Defendant labels its Avocado Oil as "Pure" and "Pure…Quality…Tested" when the Avocado Oil is contaminated with phthalates, which makes it impure.

---

[2] Our Mission, *available at* https://www.primalkitchen.com/pages/our-mission (last accessed February 26, 2025). These statements support the labeling claims and provide insight into the Defendant's intended labeling message and context for the reasonable consumer test.



CROSNER LEGAL, P.C.


PRIMAL
KITCHEN
PURE
AVOCADO OIL
PURE QUALITY TESTED
HIGH HEAT COOKING OIL
NEUTRAL,
LIGHT FLAVOR
SAUTÉ, GRILL & BAKE
1 PT 0.9 FL OZ (500 mL)
PURE
QUALITY TESTED

16. In approximately August 2025, Testing from an EPA accredited laboratory found that Defendant's Primal Kitchen Pure Avocado Oil Centrifuge Extracted contains phthalates at a concentration of 2,774 ppb. [3]

17. The results of the testing were reviewed by reputable scientific organizations and persons including a Teresa Heinz Professor of Green Chemistry & Director of the Institute for Green Sciences at Carnegie Mellon University; a Scientist Emeritus and Former Director of the National Institute of Environmental Health Sciences and National Toxicology Program and Scholar in Residence at Duke University; and an Adjunct Professor at the University of North Carolina, & Yale University.[4]

18. The EPA-certified laboratory tested for fourteen phthalate chemicals: Diethyl phthalate (DEP), Di-n-propyl phthalate (DPP), Diisobutyl phthalate (DIBP), Dibutyl phthalate (DBP), Dihexyl phthalate (DnHP), Benzyl butyl phthalate (BBP), Dicyclohexyl phthalate (DCHP), Diisononyl phthalate (DINP), Di-n-octyl phthalate (DnOP), Diisodecyl phthalate (DIDP), bis(2-Ethylhexyl)phthalate (DEHP), Dimethyl phthalate (DMP), Bis(2-propylheptyl) Phthalate (DPHP), and Didecyl phthalate (DDP). The reported testing results are expressed as a sum total of these phthalates.

19. The test involved avocado oils purchased in February 2023 to May 2024, with each product sent directly to the lab in its original packaging.

20. These phthalates can make their way into products in a variety of ways, such as via adhesives and coatings, paper and cardboard components, adjuvants and sanitizers, plasticizers in polymeric substances, and lubricants.

21. Phthalates are synthetic chemicals found in plastics. They are a type of "endocrine disrupting chemicals" which means that they negatively affect human hormones.

[3] Segedie, L., *Avocado Oils Tested for Phthalates — Buying Guide* (Aug. 6, 2024) *available at* https://www.mamavation.com/food/avocado-oils-tested-for-phthalates-buying-guide.html.

[4] *Id.*



CROSNER LEGAL, P.C.

22. Phthalate exposure is associated with the development of diabetes.[5]

23. Phthalate metabolites have documented biochemical activity including activating peroxisome proliferator-activated receptor and antiandrogenic effects, which may contribute to the development of obesity.[6] In vitro and in vivo studies suggest that phthalates have significant effects on the development of obesity.[7]

24. Phthalates accumulate in the human body over time.[8] They are plastics and are not environmentally friendly or considered clean chemicals.[9]

25. Phthalates pose "chronic health harms and potentially billions of dollars in costs."[10] In fact, a study in 2021, led by children's environmental health expert was published in the journal Environmental Pollution. "It calls for urgent regulatory action to tackle health risks from phthalates – echoing EWG's long-running warnings about the chemicals."[11]

26. The Avocado Oil states in large lettering on the front label that the oils are "Pure." The Avocado Oil additionally states that it has been "Quality Tested" and was found to be "Pure."

---

[5] Radke EG, Galizia A, Thayer KA, Cooper GS. Phthalate exposure and metabolic effects: a systematic review of the human epidemiological evidence. Environ Int. 2019 Nov;132:104768. doi: 10.1016/j.envint.2019.04.040. Epub 2019 Jun 10. PMID: 31196577; PMCID: PMC9472300.

[6] Kim SH, Park MJ. Phthalate exposure and childhood obesity. Ann Pediatr Endocrinol Metab. 2014 Jun;19(2):69-75. doi: 10.6065/apem.2014.19.2.69. Epub 2014 Jun 30. PMID: 25077088; PMCID: PMC4114051.

[7] *Id.*

[8] Federica Arrigo, Federica Impellitteri, Giuseppe Piccione, Caterina Faggio, Phthalates and their effects on human health: Focus on erythrocytes and the reproductive system, Comparative Biochemistry and Physiology Part C: Toxicology & Pharmacology. 2023;270:ISSN 1532-0456.

[9] *See id.*

[10] Environmental Working Group (EWG). Six tips to avoid phthalates after study highlights health harms, billion-dollar costs (2021), *available at* https://www.ewg.org/news-insights/news/2021/10/six-tips-avoid-phthalates-after-study-highlights-health-harms-billion.

[11] *Id.*



CROSNER LEGAL, P.C.

27. On Defendant's website, it reinforces the pure representations by saying that their products don't have "other nonsense you don't want."[12] These statements support the labeling claims and provide insight into the Defendant's intended labeling message and context for the reasonable consumer test.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S DECEPTIVE LABELING AND SUFFERED ECONOMIC INJURY**

28. Consumers, like Plaintiff, relied on Defendant's "Pure" and "Quality Tested" claims. The pure claims on the labels of the Avocado Oil are material to reasonable consumers. As evidenced above, there is strong consumer demand for "pure" products and consumers are willing to pay more for them.

29. Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Avocado Oil that was misleadingly labeled and advertised.

30. Plaintiff and other consumer would not have purchased the Avocado Oil had they known it contains phthalates which are not considered to be "Pure" and "Quality Tested" like the label of the Avocado Oil states. Phthalate contaminated products, like the Avocado Oil, should not be labeled as "Pure…Quality…Tested." This is false and misleading advertising that Plaintiff seeks to stop.

**PLAINTIFF'S PURCHASE OF THE AVOCADO OIL**

31. Plaintiff purchased the Avocado Oil with the "Pure" and "Pure … Quality … Tested" front-label statements at a retail store near her home in Merced County at least once since 2022. Plaintiff paid approximately $16 for the Avocado Oil.

32. When purchasing the Avocado Oil, Plaintiff saw and relied on the "Pure" and "Pure…Quality…Tested." claims on the front label. Plaintiff would not have purchased the

---

[12] Our Mission, *available at* https://www.primalkitchen.com/pages/our-nutritional-philosophy

CROSNER LEGAL, P.C.

Avocado Oil, or at least would have paid less for them, had she known they contained phthalates, in contradiction to the label. Phthalate-contaminated food products are not "Pure" or "Quality Tested."

33. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Avocado Oil she would not have purchased, or would have paid less for, absent Defendant's misconduct.

34. Plaintiff continues to see the Avocado Oil for sale at retail stores near her home in California and on amazon.com and desires to purchase the Avocado Oil again if the Avocado Oil was labeled in a non-deceptive manner. However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Avocado Oil's labeling when deciding in the future whether to purchase the Avocado Oil. A primary goal of this litigation is to have Defendant stop the ongoing deceptive labeling.

## NO ADEQUATE REMEDY AT LAW

35. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Avocado Oil more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

36. A jury trial for damages is more expensive, less efficient, and requires many more resources (including a considerable amount of the Court's time) than a bench trial for equitable remedies. Thus, there is no adequate remedy at law.

37. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Avocado Oil, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products without the "Pure" and "Quality Tested" claims.

38. A primary litigation objective in this litigation is to obtain injunctive relief in the form of a label change for the Products sold in California. Injunctive relief is appropriate on

behalf of Plaintiff and members of the class because Defendant continues to mislead consumers as to the Avocado Oil with the "pure" and "quality tested" claims because the Avocado Oil is contaminated with phthalates.

39. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, public injunctions are available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

40. It is also premature to determine whether there is an adequate remedy at law. No discovery has been conducted, and no expert reports have been exchanged. Defendant's internal documents may provide insight into different damages theories such as restitution in the form of the profits gained attributable to the conduct at issue. Alternative remedies can be plead in the alternative.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in California who purchased the Avocado Oil for personal use from the beginning of any applicable limitations period through the date class notice is disseminated.

42. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Avocado Oil from Defendant.

43. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

44. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

46. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Avocado Oil;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Avocado Oil;

c. Whether Defendant made misrepresentations concerning the Avocado Oil that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

47. Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Avocado Oil. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

48. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and

experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

49. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

CROSNER LEGAL, P.C.

50. Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate. As noted above, injunctive relief is a primary form of relief sought in this action.

51. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

52. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq.***

53. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

54. Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

55. At all times relevant hereto, Plaintiff and the members of the California Class were "consumer[s]," as defined in California Civil Code section 1761(d).

56. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

57. At all relevant times, the Avocado Oil manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

58. The purchases of the Avocado Oil by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

59. Defendant disseminated, or caused to be disseminated, through its advertising, misleading representations, including the "Pure" and "Quality Tested" claims. These are material misrepresentations as reasonable consumer would find the fact that the Avocado Oil has been tested and found to be contaminated with phthalates in direct contradiction to the labeling claims to be important in their decision in purchasing the Avocado Oil.

60. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Avocado Oil has characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Avocado Oil is of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Avocado Oil with an intent not to sell the Avocado Oil as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

61. Defendant violated the CLRA because the Avocado Oil was prominently advertised with the "Pure" and "Pure…Quality…Tested" claims but, in reality, the Avocado Oil is not pure since EPA-certified testing found the Product was contaminated with phthalates. Defendant knew or should have known that consumers would want to know that the Avocado Oil contains phthalates which contradict the labeling.

62. Indeed, Defendant continues to sell the Product with the "Pure" and "Quality Tested" claims even after the test results were published publicly. This is grounds to bring punitive damages in addition to an injunction halting the "Pure" and "Quality Tested" label claims (Plaintiff's primary goal). A reasonable executive in control of the company must have known of the public testing and should have corrected the false and misleading claims at issue in this action by now. However, Defendant and its corporate executives have decided to continue selling the Avocado Oil to unsuspecting consumers. Reasonable consumers do not scour the web to determine whether a product's label is false and assume companies do not knowing sell

misleadingly labeled consumer products to consumers after they know or should have known their products have been tested and shown to contain false labeling. Mark Session is Defendant's CEO/founder, and he directly interacts with consumers and is imputed with the public knowledge of the testing described herein.[13]

63. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

64. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Avocado Oil has characteristics which it does not have.

65. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

66. Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. Defendant failed to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, so Plaintiff seeks damages, attorneys' fees, and punitive damages under the CLRA.

67. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

---

[13] https://www.primalkitchen.com/pages/marks-daily-apple?



CROSNER LEGAL, P.C.

## <u>SECOND CLAIM FOR RELIEF</u>

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

68. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

69. Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

70. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

71. Defendant committed unlawful business acts or practices by making the representations (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

72. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein.

73. There is no societal benefit from deceptive advertising.

74. Plaintiff and the other Class members paid for Avocado Oil that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Avocado Oil is not "Pure" and "Quality Tested" because it is contaminated with phthalates) of which it had knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations.

75. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests (such as removing the "Pure" and "Quality Tested" claims), other than the conduct described herein.

76. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Avocado Oil is "Pure" when it contains phthalates which are not "Pure" and "Quality Tested."

77. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Avocado Oil. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Avocado Oil and Defendant's unlawful, unfair, and fraudulent practices.

78. Defendant's wrongful business practices and violations of the UCL are ongoing.

79. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

80. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

81. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:



CROSNER LEGAL, P.C.

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: August 12, 2025

CROSNER LEGAL, P.C.

By: *_/s/ Craig W. Straub_*
CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

CROSNER LEGAL, P.C.

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, Craig W. Straub, declare as follows: I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this county. Such business includes the marketing, promotion, distribution, and sale of the Avocado Oil.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed August 12, 2025 at San Diego, California.

CROSNER LEGAL, P.C.

By: *\/s/ Craig W. Straub*
CRAIG W. STRAUB

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com