# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARON JAMES, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PRIMAL NUTRITION, LLC,<br><br>Defendant. | Case No. 1:25-cv-00691-SAB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 14) |

Pending before the Court is Defendant Primal Nutrition, LLC's ("Primal") motion to dismiss. The Court held a hearing on the matter on November 12, 2025. Counsel Craig W. Straub appeared for Plaintiff, and counsel Alexander Smith appeared for Defendant. Having considered the moving papers, as well as the Court's file, the Court issues the following order granting Defendant's motion to dismiss, with leave to amend.

**I.**

**BACKGROUND**

Plaintiff is an individual who resides in California. (ECF No. 9, ¶ 14.) Defendant is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. (Id. at ¶ 13.) Defendant manufactures, distributes, advertises and sells Primal Kitchen brand avocado oil. (Id. at ¶ 2.)

Defendant advertises its Avocado Oil with a logo on the front label stating "Pure" and "Pure Quality Tested." (Id. at ¶ 3.) Defendant represents itself as having "ingredients you can

1  trust" and that they only use "premium, purposeful ingredients that we'd feed our own
2  families." (Id. at ¶ 13.) Further, on Defendant's website it states that its products do not
3  contain "other nonsense you don't want." (Id. at ¶ 27.) Plaintiff purchased Defendant's
4  Avocado Oil in Merced County, California in 2022, relying on its "Pure" and "Pure Quality
5  Tested" labeling. (Id. at ¶¶ 28, 31-32.) Plaintiff paid approximately $16 for the Avocado Oil.
6  (Id. at ¶ 32.)

7  In July 2025, the website Mamvation.com published a consumer report with results of
8  testing performed by an EPA-accredited laboratory. (Id. at ¶ 16.) The laboratory analyzed
9  samples of avocado oils purchased between February 2023 and May 2024 for the presence of
10 fourteen phthalate compounds. (Id. at ¶¶ 16, 18-19.) Each avocado oil product was sent
11 directly to the lab in its original packaging. (Id. at ¶ 19.) The laboratory found that Defendant's
12 Avocado Oil contained phthalates at a concentration of 2,774 parts per billion. (Id. at ¶ 16.)
13 The results of the testing were reviewed by reputable scientific organizations and persons,
14 including Teresa Heinz Professor of Green Chemistry & Director of the Institute for Green
15 Sciences at Carnegie Mellon University; a Scientist Emeritus and Former Director of the
16 National Institute of Environmental Health Sciences and National Toxicology Program and
17 Scholar in Residence at Duke University; and an Adjunct Professor at the University of North
18 Carolina, & Yale University. (Id. at ¶ 17.)

19 Phthalates are synthetic chemicals found in plastics that negatively affect human
20 hormones and are well-known for their ability to disrupt the hormonal system. (Id. at ¶¶ 5, 21.)
21 Research shows that exposure to phthalates reduces hormone levels, leads to various
22 reproductive problems, and contributes to the development of diabetes and obesity. (Id. at ¶¶ 5,
23 22-23.) These chemicals can enter products through multiple pathways, including adhesives
24 and coatings, paper and cardboard components, lubricants, sanitizers, and plasticizers in
25 polymeric substances. (Id. at ¶ 20.) They also accumulate in the human body over time and are
26 not environmentally friendly or considered clean chemicals. (Id. at ¶ 24.) The resulting health
27 harms from phthalates are significant and costly, prompting experts to call for urgent regulatory
28 action to address the health risks. (Id. at ¶ 25.)

1     Plaintiff alleges that she would not have purchased the Avocado Oil, or would have paid
2 less for it, had she known it contained phthalates. (Id. at ¶¶ 30, 32-33.) Labeling phthalate
3 contaminated products, such as Defendant's Avocado Oil, as "Pure Quality Tested," is false and
4 misleading. (Id. at ¶¶ 4, 15, 30.)

5     Plaintiff commenced this putative class action on June 6, 2025, and filed an amended
6 complaint on August 12, 2025. (ECF Nos. 1, 9.) Plaintiff brings claims under the following
7 causes of action: 1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code
8 §§ 1750 et seq.; and 2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
9 §§ 17200 et seq. (ECF No. 54, 69.) Plaintiff prays for certification of the class; restitution;
10 injunctive relief; punitive damages; attorney's fees and costs; pre and post judgment interests on
11 any amounts awarded; and other relief deemed just and proper. (Id. at pp. 16-17.)

12     On September 8, 2025, Defendant moved to dismiss the complaint for failure to state a
13 plausible claim upon which relief can be granted. (ECF No. 14.) The parties have consented to
14 the jurisdiction of the United States Magistrate Judge. (ECF Nos. 4, 10, 13.) The motion was
15 fully briefed (ECF No. 14, 19, 22), and the Court held a hearing on November 12, 2025. (ECF
16 No. 23.)

## II.

## LEGAL STANDARDS

19     Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and
20 plain statement of the claim showing that the pleader is entitled to relief." A complaint that
21 fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure
22 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient
23 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
24 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
25 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that
26 allows the court to draw the reasonable inference that the defendant is liable for the misconduct
27 alleged." Id. "Plausibility requires pleading facts, as opposed to conclusory allegations or the
28 formulaic recitation of the elements of a cause of action, and must rise above the mere

1  conceivability or possibility of unlawful conduct that entitles the pleader to relief." Somers v.
2  Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (cleaned up). "Factual allegations must be
3  enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

4  In ruling on a Rule 12(b)(6) motion, the court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation omitted). But "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be accepted. In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." Saloojas, Inc. v. Aetna Health of Cal., Inc., 80 F.4th 1011, 1014 (9th Cir. 2023) (cleaned up).

In alleging a claim grounded in fraud, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). A court may dismiss a claim for failing to satisfy the heightened pleading requirements of Rule 9(b). Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). Under this heightened pleading standard, a party must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting Davidson v. Kimberly-Clark, 889 F.3d 956, 964 (9th Cir. 2018)). The complaint must contain enough detail to put a defendant on notice of the alleged misconduct so they may "defend against the charge and not just deny that they have done anything wrong." Vess, 317 F.3d at 1106. "[C]laims based on an omission can succeed without the same level of specificity required by a normal fraud claim." Miller v. Ford Motor Co., No. 2:20-cv-01796-TLN-CKD, 620 F. Supp. 3d 1045, 1068 (E.D. Cal. Aug. 10, 2022) (citation and internal quotations omitted).

### III.

### DISCUSSION

Primal argues that this action should be dismissed because Plaintiff has not plausibly alleged that Defendant's products contain phthalates, that reasonable consumers would not be

misled by the Avocado Oil label, and that Plaintiff lacks standing to seek injunctive relief. (ECF No. 14, pp. 1-2.)  Defendant also requests judicial notice of five documents.  The Court first determines whether judicial notice is proper before considering the allegations of the complaint.

**I.   JUDICAL NOTICE**

Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Federal courts may also take notice of proceedings if those proceedings have a "direct relation" to matters at issue.  U.S. Ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  Additionally, under the incorporation-by-reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

Defendant requests that the Court take judicial notice of two materials from the Federal Drug Administration ("FDA") posted to its public website, a webpage from the website of California's Office of Environmental Health Hazard Assessment ("OEHHA"), a blog post from Mamavation.com, and Defendant's product label.  (ECF No. 14.)  Plaintiff opposes the FDA and OEHHA materials, arguing that the Court may not take judicial notice of the truth of any facts contained therein and that the materials are irrelevant to Defendant's motion because they do not address product labeling or how a reasonable consumer would interpret Defendant's representations.  (ECF No. 19.)

Because the requested documents have a direct relation to matters at issue and are central to Plaintiff's cause of action in this case, the Court GRANTS Defendant's request.  However, the Court takes judicial notice only of the existence of the FDA and OEHHA materials, not of the

truth asserted in them. BP W. Coast Prods. LLC. v. May, 347 F. Supp. 2d 898, 906 (D. Nev. 2004).

## II.   PLAUSIBILTY OF PLAINTIFF'S CENTRAL FACTUAL ALLEGATIONS

As a preliminary matter, because Plaintiff's CLRA and UCL causes of action are all grounded in fraud, they must meet the heightened pleading requirements of Rule 9(b). Davidson, 889 F.3d at 964. Even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." Vess, 317 F.3d at 1103-04. Accordingly, Plaintiff's claims under California's consumer protection statutes are subject to a higher showing of particularity. See Fed. R. Civ. P. 9(b); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

Plaintiff's claims in this action stem from a blog post from Mamavation.com, which claimed that an EPA accredited laboratory had detected 2,774 parts per billion of phthalates in Primal's Avocado Oil. The blog states that avocado oils were purchased between February 2023 and May 2024, shipped in their original packaging, and analyzed for fourteen different phthalates. Defendant claims that the blog post fails to satisfy the heightened pleading requirements of Rule 9(b) because the blog does not identify which brand of avocado oil was purchased at which time, does not identify the laboratory that conducted the testing or describe the methodology that the laboratory used to conduct its testing, and the test results do not describe which phthalates the laboratory detected in Primal's Avocado Oil. (ECF No. 14, pp. 8, 9-10.)

Upon review of the blog post, the detailed finding of phthalates in Defendant's Avocado Oil is minimal. A simple bullet point states, "Primal Kitchen Pure Avocado Oil Centrifuge Extracted—Total phthalate 2,774 ppb." (ECF No. 14-6, Ex. 4.) The Court agrees with Defendant that this falls short of Rule 9(b)'s heightened pleading standard. It is not clear how the testing was conducted, who performed the testing, or what specific results were obtained. Rather, the report merely summarizes the sum of the phthalates found. Courts have dismissed lawsuits on similar grounds. See e.g., Barton v. P&G, 766 F. Supp. 3d 1045, 1061-62 (S.D. Cal. Feb 13, 2025) (finding that the complaint did not meet the heightened pleading standard of Rule

9(b) because it failed to provide "sufficient detail" regarding the independent laboratory that conducted the testing or the manner in which the testing was performed); Bees v. Sunland Trading, Inc., 2024 WL 4190090, at *19 (E.D. Cal. Sep. 12, 2024) ("a single allegation without any supporting factual information such as… how it was tested, who performed the testing…cannot satisfy the particularity requirement"); Scheibe v. Performance Enhancing Supplements, LLC, 2023 WL 3829694, at *8 (S.D. Cal. June 5, 2023) (finding that plaintiff failed to meet Rule 9(b)'s particularity requirement because the "only allegation for the 'how' prong [was] a single conclusory allegation that… testing by independent third-party laboratory ha[d] confirmed that the malic acid that [d]efendant use[d] in these [p]roducts [was] DL malic acid.").

Plaintiff cites Scheibe v. ProSupps USA, LLC, 141 F.4th 1094 (9th Cir. 2025) to support her position that disputes over methodology are for discovery, not a 12(b)(6) motion. (ECF No. 19, p. 4.) However, in Scheibe, the plaintiff had conducted testing using specific methodologies recognized and approved by the FDA. Id. at 1101. The court therefore found that the plaintiff's "preliminary testing of that one sample [was] enough to avoid preemption on the pleadings because it allow[ed] a court to draw a reasonable inference that testing a composite sample according to FDA regulations would show that the supplement [was] misbranded." Id. at 1099. The Court finds this case unpersuasive because the circumstances here are materially different; Plaintiff provided no information regarding the testing procedures used.

Defendant next argues that Plaintiff has not plausibly alleged that the specific avocado oil she purchased contained phthalates. (ECF No. 14, pp. 10-12.) As Plaintiff points out, courts within this Circuit have held that plaintiffs need not allege their individual item was tested and contained contamination. See e.g., Rodriguez v. Mondelez Glob. LLC, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023) ("Plaintiffs need not allege that the specific [p]roducts they purchased had 'unsafe levels' of lead and/or cadmium, **but may simply aver facts from which this Court can make such reasonable inference**") (emphasis added); Solis v. Coty, Inc., 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023) (same). That said, while courts have stated that individual's items need not be tested, a plaintiff must plead facts that make it plausible that the product purchased

7

contained the same defect or otherwise contaminant. For example, in <u>Barton v. Procter & Gamble Co.</u>, the court found that plaintiffs were not required to test the specific products they purchased because they plausibly alleged that the challenged products uniformly contained lead. 2025 WL 2307686, at *4 (S.D. Cal. Aug. 8, 2025). Here, by contrast, Plaintiff relies on testing conducted by Mamavation, which tested only one product per brand. Those limited results do not support a plausible inference that some or even all of Defendant's Avocado Oil sold during the class period contained phthalates. Indeed, Mamavation's own report acknowledges: "Because Mamavation only tested one product per brand, we cannot claim to know if these issues are, in fact, industry-wide or portfolio-wide." (ECF No. 14-6, Ex. 4.)

The Court finds that Plaintiff has failed satisfy the heightened pleading requirements of Rule 9(b). Accordingly, the Court grants Defendant's motion as to this issue with leave to amend.

### III. DECEPTIVE CONDUCT

Plaintiff contends that Defendant's Avocado Oil label is false and misleading under the CLRA and UCL because the product contains phthalates, which is inconsistent with the representations "Pure" and "Pure Quality Tested." Before conducting its analysis, the Court finds it necessary to set forth the elements of claims under the UCL and CLRA.

a. *CLRA and UCL*

The CLRA and UCL are California statutes that collectively "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." <u>Leoni v. State Bar</u>, 39 Cal. 3d 609, 626 (1985). These statutes are "governed by the 'reasonable consumer' test," which asks whether a plaintiff could "plausibly prove that a reasonable consumer would be deceived." <u>Id</u>. at 940. "If the court can determine from the facts alleged that no reasonable consumer would be so deceived, dismissal may be granted." <u>Ebner v. Fresh, Inc.</u>, 838 F.3d 958, 967 (9th Cir. 2016).

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. As relevant here, the CLRA prohibits "[r]epresenting

that goods . . . have . . . characteristics, ingredients, uses, [or] benefits . . . that they do not have," id. § 1770(a)(5), "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," id. § 1770(a)(7), "[a]dvertising goods . . . with intent not to sell them as advertised," id. § 1770(a)(9), and "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not," id. § 1770(a)(16). To bring a CLRA claim, a plaintiff must show (1) the defendant engaged in deceptive conduct and (2) the deception caused plaintiff harm. In re Vioxx Class Cases, 180 Cal. App. 4th 116, 129 (2009). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

b. *Reasonable Consumer Test*

Under the reasonable consumer standard, plaintiffs "must show that members of the public are likely to be deceived" by the alleged representations. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). Likely to deceive requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled," and not a "mere possibility" that the label or advertising "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003).

Defendant contends that no reasonable consumer would be misled by the labeling of its Avocado Oil product. The labeling makes clear that "Pure" refers to the absence of oils other than avocado oils when viewed in context. (ECF No. 14, p. 15.) Additionally, the term "pure" is not misleading because there is no concrete or objective standard defining what it means for a product to be "pure." (Id. at p. 13.) In support of this argument, Defendant cites to McConnon v. Kroger Co., where the plaintiff alleged that Kroger falsely marketed its avocado oil as "pure" even though it was allegedly adulterated with other oils. 2024 WL 3941340 (C.D. Cal. June 21, 2024). In that case, the court held that plaintiff's failure to define "pure" warranted dismissal because the court could not evaluate the merits of the claim absent a definition. Id. at *3. Likewise, in Hawkins v. Walmart, Inc., the court reached a similar conclusion, finding that

plaintiff "failed to establish any defined meaning of the term 'pure' on which a reasonable consumer would be misled." 766 F. Supp 3d 1036, 1043 (E.D. Cal. 2025). The Court finds these cases persuasive.

Courts have recognized that the term "pure" has no fixed meaning and is inherently ambiguous. See Tran v. Sioux Honey Ass'n Coop., 471 F. Supp. 3d 1019, 1028 (C.D. Cal. 2020). Although Plaintiff alleges there is a strong consumer demand for products labeled "pure" and that consumers are willing to pay a premium for such products, Plaintiff does not provide a concrete or objective definition of the term "pure." Like McCannon and Hawkins, without such a definition, there is no standard by which to assess how a product qualifies as "pure" or whether Defendant's use of that term is likely to mislead a reasonable consumer.

At the hearing, Plaintiff proffered that the phrases "Pure" and "Pure Quality Tested" convey different meanings—"Pure" referring to the product's purity, and "Pure Quality Tested" indicating that the product has been tested for quality and for purity against contaminants. Defendant countered that both phrases communicate the same message: that the product consists entirely of avocado oil, and that labels commonly include multiple statements reinforcing a single concept. Viewed in context, the label as a whole supports Defendant's position. The front of the product displays an image of a cut avocado next to the words "Pure Quality Tested," along with a similar illustration accompanied by a checkmark. These design elements, together with statements referencing taste and high-heat cooking uses, communicate a message of product quality and suitability for cooking—not an assurance of absolute chemical purity.

Moreover, the cases cited by Plaintiff are distinguishable. In Berke v. Whole Foods Mkt., the court found it plausible that a reasonable consumer could interpret "pure" to mean free of arsenic, even though arsenic is naturally occurring. 2020 WL 5802370, at *13 (C.D. Cal. Sept. 18, 2020). Unlike Berke, phthalates are synthetic chemicals that are not inherent to avocado oil, and therefore a consumer cannot plausibly expect it to be excluded from the term "Pure." Additionally, in Zeiger v. WellPet LLC, the court considered the combined terms "natural, safe and pure" and found that a reasonable consumer could interpret those

1  representations to mean that the product did not contain arsenic, lead, or BPAs.  304 F. Supp. 3d
2  837, 852 (N.D. Cal. 2018).  Here, however, the only term in controversy is "pure," which
3  Zeiger did not evaluate in isolation.  The remaining cases cited by Plaintiff involve terms other
4  than "pure," and are either from other districts or otherwise inapposite.

5  Plaintiff further argues that Defendant's marketing reinforces the idea that its products do
6  not contain "other nonsense you don't want" and promote "high-quality ingredients that make
7  mealtime easy and delicious, so you can get the most out of life."  However, these statements
8  appear on Defendant's website and not on the product label itself.  Plaintiff has not sufficiently
9  alleged that she relied on the website's marketing in making her purchase, and therefore these
10 representations cannot support a plausible claim that a reasonable consumer would be misled by
11 the product's labeling.

12 Although a determination of what a "reasonable person" might believe is generally a
13 question of fact and inappropriate for resolution on a motion to dismiss, see Hammerling v.
14 Google LLC, 615 F. Supp. 3d 1069, 1082 (N.D. Cal. 2022), this case presents one of the rare
15 circumstances in which the issue may be decided as a matter of law.  See Carrea v. Dreyer's
16 Grand Ice Cream, Inc., 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal with
17 prejudice of CLRA and UCL claims because no reasonable consumer would be misled by the
18 disputed label).  The Ninth Circuit has made clear that a "representation does not become 'false
19 and deceptive' merely because it will be unreasonably misunderstood by an insignificant and
20 unrepresentative segment of the class of persons to whom the representation is addressed."
21 Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1162 (9th Cir. 2012).

22 Accordingly, because the Court finds Plaintiff has not adequately pled that Defendant's
23 product label is misleading under the CLRA or UCL, the Court grants Defendant's motion with
24 leave to amend.

25 **IV.   INJUNCTIVE RELIEF**

26 Because Plaintiff failed to plausibly state a claim upon which relief can be granted, the
27 Court need not reach the question of whether injunctive relief is appropriate.  Injunctive relief is
28 remedial, and a plaintiff cannot obtain such relief without a valid underlying claim; therefore,

there is no basis for injunctive relief. See Allen v. City of Sacramento, 234 Cal. App. 4th 41, 65 (2015). Nevertheless, even assuming arguendo that Plaintiff had stated a valid claim, the Court finds that Plaintiff failed to meet her burden.

To satisfy the standing requirement for injunctive relief, a plaintiff must show "a sufficient likelihood that [s]he will again be wronged in a similar way." City of Los Angeles, 461 U.S. 95, 111 (1983). In the context of false advertising cases, the Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." Davidson, 889 F.3d at 969. Such a threat may be shown through "consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Id. at 969-70.

Here, Plaintiff seeks an order forcing Defendant to "stop the ongoing deceptive labeling." (ECF No. 9, ¶ 34.) Plaintiff alleges that she "is unable to rely on the Avocado Oil's labeling when deciding in the future whether to purchase the Avocado Oil", and that she "desires to purchase the Avocado Oil again if the Avocado Oil was labeled in a non-deceptive manner." (Id.) However, Plaintiff also claims that the product contains phthalates, which she describes as detrimental to human health and capable of causing chronic harm. (Id. at ¶¶ 5, 21-25.) These statements suggest that Plaintiff's reluctance to repurchase the product stems from concerns about its composition, not its labeling. Because relabeling would not address the alleged health risks, Plaintiff has not plausibly alleged a likelihood of future harm arising from the alleged misrepresentation. That said, given the ambiguity, the Court cannot conclude that amendment would be futile. Accordingly, Plaintiff's injunctive relief claims under the UCL and CLRA are dismissed for lack of standing, with leave to amend.

///

///

///

# V.
# CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss this action (ECF No. 14) is **GRANTED**;
2. Plaintiff's complaint is **DISMISSED with leave to amend**;
3. Within **thirty (30) days** of the date of this order, Plaintiff shall either file a second amended complaint or notify the Court that she does not wish to file an amended complaint;
4. Failure to comply with this order may result in dismissal of this action due to failure to prosecute and to comply with a Court order.

IT IS SO ORDERED.

Dated: __**November 19, 2025**__

STANLEY A. BOONE
United States Magistrate Judge